WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gina M. Gonzalez, personally and as next best friend of A.F., a minor,<br><br>   Plaintiffs,<br><br>vs.<br><br>United States of America,<br><br>   Defendant. | CV 12-00375-TUC-JGZ<br><br>**ORDER** |

This action arises from a home invasion that resulted in the murder of Robert Flores and his daughter, B.F., in Arivaca, Arizona. Gina M. Gonzalez, Flores's wife and the mother of B.F., was injured during the attack, and she now brings this action personally and on behalf of her other daughter A.F., alleging that the United States is liable for damages arising from the attack because of the FBI's negligence. Plaintiffs allege the FBI was made aware of, but failed to notify local law enforcement about the planned invasion.

On July 23, 2012, the United States filed a Motion to Dismiss contending that the Complaint fails to state a claim and that the Court lacks subject matter jurisdiction. (Doc. 5.) The Plaintiffs have opposed the motion, but have also submitted an affidavit asserting they cannot present facts essential to justify their opposition, and have requested time to take discovery. (Doc. 8.) Defendant opposes Plaintiffs' discovery request. (Doc. 9.)

This Court heard argument on November 26, 2012, and took the matter under advisement. Having fully considered the motion, applicable legal authority, and arguments of counsel, the Court concludes that it lacks subject matter jurisdiction, and therefore will grant Defendant's Motion to Dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual allegations of Plaintiffs' Complaint describe a series of communications between three individuals – Ronald Wedow, Shawna Forde and Robert Copley – with ties to the Minutemen Group, as well as Copley's communications with FBI Agent Andersen.[1] According to Plaintiffs' Complaint, the following communications proceeded and led to the May 30, 2009 invasion of the home of Robert Flores and his family.

In approximately April 2009, Ronald Wedow received a phone call from Shawna Forde, a member of an organization called the Minutemen Group. (Complaint, Doc. 1, ¶ 7.) Forde told Wedow that she knew a person who lived in Arivaca, Arizona that wanted to provide her with information concerning illegal immigrants. (*Id*.) Wedow passed this information along to Robert Copley, whom Wedow knew to have contacts at the FBI. (*Id*.)

Copley spoke with Forde several times in April 2009 about her Minutemen operations in Arizona. (*Id*. ¶ 8.) At Forde's request, Copley set up a meeting in Aurora, Colorado, at a Flying J Truck Stop, to recruit individuals to join the Minutemen. (*Id*.) Copley informed FBI Agent Chris Andersen of Forde's plan to hold a meeting at the gas station.[2] (*Id*. ¶ 9.) Copley requested that an undercover FBI agent attend the meeting. (*Id*.) Agent Andersen

---

[1] The Court notes that the parties offer different spellings of Agent Andersen's name. Plaintiffs use the spelling "Anderson" in the Complaint and "Andersen" in some documents responding to the Motion to Dismiss. Defendant uses "Andersen." To avoid confusion, the Court will use the spelling "Andersen."

[2] According to Plaintiffs, Agent Andersen had been with the FBI for less than one year at the time of these meetings (Complaint, Doc. 1, ¶ 19) and was assigned to a FBI field office in Colorado. (Doc. 9, p. 5.)

- 2 -

1  declined to do so, but instructed Copley to attend the meeting and report his findings to him.
2  (*Id.*)

3  On May 15, 2009, Copley, Wedow and several other individuals attended the meeting
4  in Aurora. (*Id.* ¶ 10.) At the meeting, Forde described her plan to invade a home in Arivaca
5  for the purpose of "securing" it and stealing drugs, weapons and money. (*Id.*) Forde
6  displayed a map of the area where the home was located. (*Id.* ¶ 11.)

7  Following the meeting, Copley reported what was discussed to Agent Andersen. (*Id.*
8  ¶ 12.) Copley informed Agent Andersen of Forde's intention to "secure" the residents in the
9  home, which meant "hitting the house like a SWAT team . . . going in armed." (*Id.*) Copley
10 provided Agent Andersen with a map that had been drawn on poster board by Forde during
11 the meeting which showed the approximate location of the targeted home. (*Id.*) Plaintiffs
12 believe and allege that Agent Andersen provided the map to the FBI's office in Phoenix,
13 Arizona, where it was lost. (*Id.* ¶ 13.) Plaintiffs also allege that Copley told Agent Andersen
14 that he considered the threat posed by Forde to be real and imminent. (*Id.* ¶ 14.)

15 On May 30, 2009, Raul Flores and his daughter B.F. were shot and killed during a
16 home invasion led by Forde. (*Id.* ¶ 27, 29.) Gina Gonzalez, who witnessed the killings, was
17 shot twice and wounded. (*Id.* ¶ 28.)

18 On May 15, 2012, Plaintiffs initiated this action against the United States. In their
19 Complaint, Plaintiffs assert that Agent Andersen and the FBI violated Department of Justice
20 (DOJ) written rules that required FBI field officers who receive credible information
21 pertaining to serious criminal activity outside the field office's investigative jurisdiction, to
22 promptly transmit full disclosure of that information to the appropriate local law enforcement
23 agency. (*Id.* ¶ 18.) Plaintiffs contend that had Agent Andersen disclosed the information
24 received from Copley to the Pima County Sheriff's Office (PCSO) – the local law
25 enforcement agency in the Arivaca area – the PCSO would have prevented the home
26 invasion. (*Id.* ¶ 22.) Plaintiffs state in support that a few days prior to the home invasion,
27 Forde and an unidentified male companion approached PCSO Deputy H.O. Anderson, Jr.,
28 who was on patrol in Arivaca. During the encounter Forde identified herself to Deputy

Anderson and explained that she was in the Arivaca area with others doing Minutemen type work. (*Id.* ¶ 23.) Plaintiffs claim that if Deputy Anderson had been notified of Forde's plan to commit a home invasion, he could have prevented that crime by arresting Forde and her male companion for conspiracy to promote or aide the commission of an offense in violation of A.R.S. § 13-1003(A). (*Id.* ¶ ¶ 24, 25.)

On July 23, 2012, the United States filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction and For Failure to State a Claim. (Doc. 5.) The Motion asserts three separate grounds for dismissal: (1) Plaintiffs' Complaint fails to satisfy the pleading requirements of Rule 8, Fed. R. Civ. P., (2) the Complaint fails to state a claim because Defendant owed no duty to Plaintiffs under Arizona law, and (3) the Court lacks subject matter jurisdiction because the discretionary function exception to the Federal Tort Claims Act (FTCA) bars Plaintiffs' claims. Because this Court finds that it lacks subject matter jurisdiction, it does not address the other bases for dismissal raised by the government in its Motion.

**DISCUSSION**

**I.     The United States is immune from liability pursuant to the discretionary function exception to the FTCA.**

The FTCA authorizes suits against the United States for negligent performance of governmental functions. 28 U.S.C. § 1346(b). The FTCA, however, is subject to certain exceptions that immunize the United States from lawsuits. *See Weissich v. United States*, 4 F.3d 810, 812 (9th Cir. 1993). One such exception is the discretionary function exception, which bars:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "The basis for the discretionary function exception was Congress' desire to 'prevent judicial second guessing of legislative and administrative decisions

- 4 -

grounded in social, economic, and political policy through the medium of an action in tort.'" *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). In drafting the exception, Congress meant "to protect the Government from liability that would seriously handicap efficient government operations." *Vickers v. United States,* 228 F.3d 944, 948 (9th Cir. 2000) (quoting *United States v. Muniz,* 374 U.S. 150, 163 (1963)). The discretionary function exception insulates the government from liability if the action challenged involves the exercise of policy judgment. *Id*. at 537. "Where the discretionary function exception to the FTCA applies, no federal subject matter exists." *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996).

The court employs a two-step test to decide whether the discretionary function exception precludes the assertion of a particular claim. The court must first determine whether the act or omission was discretionary, *i.e*., whether it involved an element of judgment or choice for the acting employee (the "discretionary act" prong). *Berkovitz*, 486 U.S. at 536; *Alfrey v. United States,* 276 F.3d 557, 561 (9th Cir. 2002). If the act or omission was discretionary, the court must then determine whether that judgment was the type that Congress intended to shield from tort liability ("the policy judgment" prong). *Berkovitz*, 486 U.S. at 536; *Alfrey,* 276 F.3d at 561. Both the discretionary act prong and the policy judgment prong must be satisfied before the discretionary function exception will apply. *Sabow*, 93 F.3d at 1451. The government has the burden of proving that the discretionary function exception applies under all the facts. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir. 1994). Thus, in order to demonstrate that it is immunized by the discretionary function exception to the FTCA, the government must demonstrate that Agent Andersen's decision not to notify local law enforcement was discretionary and that it was the type of omission that Congress intended to shield from tort liability.

**A.     The decision whether or not to notify local law enforcement was a discretionary act**.

If an act is mandatory, then, by definition, there can be no discretion involved.  Thus, where a federal statute, regulation, or policy "specifically prescribes a course of action for an employee to follow," the discretionary function exception does not apply. *Berkovitz*, 486 U.S. at 536.  In such a case, the employee has no option but to adhere to the directive, and therefore, he or she does not act in a discretionary capacity.  *Id*.  On the other hand, if a policy "allow[s] room for implementing officials to make independent policy judgments, the discretionary function exception protects the acts taken by those officials in the exercise of this discretion." *Berkovitz*, 486 U.S. at 546.

Plaintiffs contend that section VI(C)(2) of the Attorney General's Guidelines for Domestic FBI Operations ("Guideline § VI(C)(2)") required Agent Andersen and the FBI to report the planned home invasion to local law enforcement.  (Doc. 8, p. 14.)  This guideline, which is entitled "Criminal Matters Outside FBI Jurisdiction," provides in relevant part:

> When credible information is received by an FBI field office concerning serious criminal activity not within the FBI's investigative jurisdiction, the field officer shall promptly transmit the information or refer the complainant to a law enforcement agency having jurisdiction, except where disclosure would jeopardize an ongoing investigation, endanger the safety of an individual, disclose the identity of a human source, interfere with a human source's cooperation, or reveal legally privileged information.  If full disclosure is not made for the reasons indicated, then, whenever feasible, the FBI field office shall make at least limited disclosure to a law enforcement agency or agencies having jurisdiction, and full disclosure shall be made as soon as the need for restricting disclosure is no longer present . . . .[3]

(Doc. 8-5, p. 2.)   Plaintiffs assert that Guideline § VI(C)(2) was a mandatory, non-discretionary rule that required the FBI to disclose Copley's information to the Pima County

---

[3]An online version of the Guideline § VI(C)(2) is available at:
http://www.justice.gov/ag/readingroom/guidelines.pdf (last visited January 23, 2013).

- 6 -

1 Sheriff's Office or to obtain written approval at a supervisory level not to make a full
2 disclosure. Plaintiffs emphasize that Guideline § VI(C)(2) directs that the FBI "shall"
3 promptly transmit the information.

4 In its Motion to Dismiss, the Government did not reference Guideline § VI(C)(2),
5 relying instead on numerous cases concluding that the discretionary function protects agency
6 decisions regarding the scope and manner in which law enforcement agencies conduct an
7 investigation. (Doc. 5, pp. 18-19.)  In its Reply to Plaintiffs' Response to the Government's
8 Motion to Dismiss, the Government asserted that Guideline § VI(C)(2) was the federal policy
9 the Government was relying on in support of its discretionary function argument. (Doc. 9,
10 pp. 4-6.) At oral argument, the Government  (through new counsel) asserted that § VI(C)(2)
11 is not applicable to this case because Guideline § VI(C)(2) contemplates disclosure only in
12 situations where criminal activity is not within the FBI's investigative jurisdiction.
13 According to the Government, the FBI would have had investigative jurisdiction in this case
14 as Forde was conducting an interstate conspiracy by recruiting individuals in Colorado for
15 a home invasion in Arizona.  Because the Court concludes that Guideline § VI(C)(2) is not
16 a mandatory policy that prohibits the exercise of discretion, it need not decide whether the
17 FBI had jurisdiction over the investigation of the home invasion during its planning stages.
18 In sum, the Court concludes that, regardless of the applicability of Guideline § VI(C)(2), the
19 decision whether to disclose details of the investigation to local law enforcement was a
20 discretionary one.

21 As Plaintiffs note, Guideline § VI(C)(2) employs the word "shall," which suggests
22 that the disclosure requirements of the guideline are  mandatory. However, examination of
23 the guideline as a whole, the words and phrases modifying "shall," as well as the factors set
24 forth for consideration, clearly refutes the conclusion that Guideline § VI(C)(2) mandated
25 disclosure.  Under the guideline, the disclosure of information to law enforcement is
26 premised upon the FBI's determination and consideration of a variety of factors. Before any
27 disclosure of information can be made, an FBI agent must initially consider and decide

1  whether the information is credible and whether the criminal activity is serious. The opening
2  sentence of Guideline § VI(C)(2) provides for the prompt transmission of information if it
3  is "credible" and "concern[s] serious criminal activity." In addition, even if information is
4  deemed to be credible and involves serious criminal activity, disclosure of that information
5  can only be made after consideration of the effects of such disclosure. Under Guideline §
6  VI(C)(2), an FBI agent must assess whether providing the information to a local law
7  enforcement agency would jeopardize an ongoing investigation, whether it would endanger
8  the safety of an individual, whether it would disclose the identity of a human source, whether
9  it would interfere with a human source's cooperation, and whether it would reveal legally
10 privileged information.

11       The discretion given to the FBI regarding disclosure is also evident in Guideline §
12 VI(C)(2)'s requirement that an agent consider partial disclosure. Guideline § VI(C)(2)
13 specifically references considerations of feasibility and indicates that disclosure is not
14 mandatory by its provision: "*if* full disclosure is not made for the reasons indicated, then
15 *whenever feasible*, the FBI field office shall make at least limited disclosure." (Guideline §
16 VI(C)(2) (emphasis added)). Use of the words "if" and "whenever feasible" are further
17 indicators that Guideline § VI(C)(2) does not mandate disclosure and provides for the
18 exercise of choice and judgment in its application. *See Ochran v. United States*, 117 F.3d
19 495, 500-01 (11th Cir. 1997) (use of the word 'shall' in describing the responsibilities of the
20 AUSA did not render the guidelines mandatory because there was room for the AUSA to
21 exercise judgment or choice in discharging his/her responsibilities); *Dichter-Mad Family*
22 *Partners, LLP v. United States*, 707 F.Supp.2d 1016, 1042-43 (C.D. Cal. 2010) (granting
23 defendant's motion to dismiss, finding, among other things, that the statute's mandatory
24 "shall" was modified by the discretionary "as appropriate" and thus the statute provided SEC
25 examiners with discretion). Accordingly, even if Agent Andersen was acting pursuant to
26 Guideline § VI(C)(2), his actions were discretionary and therefore the discretionary act prong
27 of the discretionary function exception to the FTCA is satisfied.

28

**B.  A decision whether or not to alert local law enforcement is a policy judgment of the type that Congress intended to shield from tort liability.**

The primary focus of the "policy judgment" prong is on the nature of the actions taken and on whether they implicate choices among competing policy goals. *United States v. Gaubert*, 499 U.S. 315, 325 (1991). The discretionary function exemption excepts only those exercises of judgment which involve considerations of social, economic and political policy. *Alfrey,* 276 F.3d at 561.  The decision "need not *actually* be grounded in policy considerations so long as it is, by its nature, susceptible to policy analysis." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) (emphasis in original) (internal citation and quotations omitted).  This Court concludes that the decision whether to alert local law enforcement of potential serious criminal activity is a policy judgment regardless of whether the decision is considered in relation to Guideline § VI(C)(2) or relevant case law.

If a regulation permits the exercise of discretion, as Guideline § VI(C)(2) does, the very existence of the regulation "creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id*. Plaintiffs have not overcome this presumption. The plain language of Guideline § VI(C)(2) demonstrates that the exercise of discretion is required to balance potentially competing and  significant social policies. These policies include protection of the public, protection of sources of information, and maintenance of ongoing criminal investigations.  Under Guideline § VI(C)(2), the decision-maker must balance these competing interests to arrive at a decision whether to disclose information and how much information to disclose, if any.

- 9 -

1       These same policy considerations are present in the absence of guidelines such as §
2 VI(C)(2). The Court notes that there is much authority to support the conclusion that, absent
3 a mandatory directive, the discretionary function exception protects a law enforcement
4 agency's decisions regarding the scope and manner in which the agency conducts an
5 investigation, including notification of potential victims of potential criminal activity. For
6 example, in *Weissich v. United States*, 4 F.3d 810 (9th Cir. 1993), the Ninth Circuit affirmed
7 the dismissal of a suit alleging that the Bureau of Alcohol, Tobacco and Firearms (ATF) and
8 United States Probation Service (USPS) negligently failed to warn a prosecutor of an
9 impending threat posed by a federal probationer, who shot and killed the prosecutor. After
10 determining there were no formal regulations governing ATF's conduct and no mandatory
11 regulations governing USPS's conduct, the court held that the decision whether to warn was
12 a matter of discretionary choice for the agency and that choice implicated the policy concerns
13 of how much of the agency's resources it should commit to identifying victims, what
14 standard it should adopt to determine which potential victims to notify, and how it should go
15 about notifying them. The court stated that the agencies' analysis would likely include
16 consideration of budgetary constraints as well as time and personnel limitations. 4 F.3d at
17 813-814. Similarly, in *Alfrey v. United States*, 276 F.3d 557, 567 (9th Cir. 2002), the court
18 held that the prison officials' decision how to respond to an inmate's report of threat from
19 cell mate was protected by discretionary function. In *Sabow v. United States,* 93 F.3d 1445,
20 1451-1454 (9th Cir. 1996), the court held that discretionary function exception protected
21 decisions by officers of the Naval Investigative Service (NIS) and Judge Advocate General
22 (JAG) concerning the scope and manner in which they conducted an investigation into death
23 of a Marine Corps' colonel where neither agency violated a mandatory directive. In addition,
24 in *McCloskey v. Mueller, III, Director of Federal Bureau of Investigation,* 385 F.Supp.2d
25 74 (D.Mass. 2005), the district court precluded the plaintiffs' claim that the FBI was liable
26 to the estate of a murder victim due to its failure to respond to an alleged bank robber's offer
27 to turn himself in one day before the alleged robber murdered the victim. The court found
28

that the FBI operator's decision not to follow up on phone call from the alleged bank robber fell within the FBI's broad discretion to decide whether to investigate and/or apprehend and that decision "necessarily weighs the benefit to society in preventing future crime against the limited nature of law enforcement resources." *Id.* at 80 (internal citations omitted). Accordingly, the Court concludes that Agent Andersen's decision not to notify local law enforcement falls within the policy judgment prong of the discretionary function exception to the FTCA.

**II.     Request for Discovery Pursuant to Fed. R. Civ. P. 56(d)**

Plaintiffs suggest the Court cannot consider the applicability of the discretionary function exemption until Agent Andersen's reasons for failing to disclose the Copley information are ascertained. (Doc. 8, p. 16-17.) Plaintiffs argue:

> Self-evidently, if Andersen attempted to pass on the home invasion information to Arizona law enforcement but negligently failed to do so because the map of the home invasion site was inadvertently lost, there could be no claim of discretionary function immunity. Similarly, if Andersen failed to pass on the information to local law enforcement because he simply negligently forgot about the policy directive that required him to do so, there could again be no claim of discretionary function immunity. Lastly, if Andersen failed to pass on the information in the face of objectively credible evidence that a home invasion was going to be committed because he negligently decided that it should not be turned over despite the Department of Justice policy to the contrary, there again should be no claim of discretionary function immunity because Andersen would have violated a mandatory policy that left him no room for discretion.

(Doc. 14, p. 3.) Plaintiffs request that the Court permit discovery prior to ruling on the Motion to Dismiss to allow Plaintiffs an opportunity to adequately address the factual and legal issues raised in the Motion. Through discovery Plaintiffs seek: (1) evidence (documentary and testimonial) as to what actions were taken by FBI personnel after learning of the home invasion plans, and (2) information about Guideline § VI(C)(2), including agency interpretation of that guideline and the custom and practice of how that rule is obeyed. (Affidavit of Counsel, Doc. 8-1, ¶ 3.) According to Plaintiffs, "The question that

- 11 -

must be answered during discovery is why the home invasion information was not passed on to local law enforcement." (Doc. 14, p. 4.)

Rule 56(d), Fed. R. Civ. P., provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." [4] To obtain relief under Rule 56(d), the moving party must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

"[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *Am. West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989). However, a "court's refusal to allow further discovery before dismissing on jurisdictional grounds is not an abuse of discretion 'when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Id.* at 801 (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977)). If the record shows that the requested discovery is unlikely to produce facts needed to survive a Rule 12(b)(1) motion, a party is not entitled to jurisdictional discovery. *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009). "This is particularly true where the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Id*.

---

[4] Cases decided before 2010 cite to Rule 56(f); however, the rule was amended in 2010 and renumbered as Rule 56(d). "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 Advisory Committee's Notes. For clarity, this Court refers to this rule in all caselaw discussions as Rule 56(d).

Plaintiffs' intended discovery will not yield facts which would establish a basis for opposing Defendant's Motion to Dismiss for lack of subject matter jurisdiction. Plaintiffs' argument as to the necessity for such discovery miscomprehends the analysis this Court must employ in evaluating the applicability of the discretionary function exemption. In its evaluation, the focus of the Court's inquiry is not on the agent's subjective intent in exercising his or her discretion prescribed by statute or regulation, but on the nature of the agent's actions and whether the actions are susceptible to policy analysis. *Gaubert,* 499 U.S. at 325. When a policy allows room for deciding officials to make independent judgments, the discretionary function exception protects the acts taken by those officials in the exercise of that discretion regardless of whether or not the discretion involved is abused. *See GATX/Airlog Co.*, 286 F.3d at 1178 ("Even if the FAA's decision was entirely based on objective scientific standards, the question is not whether policy factors necessary for a finding of immunity were *in fact* taken into consideration, but merely whether such a decision is *susceptible* to policy analysis." (emphasis in original)); *Alfrey*, 276 F.3d at 567 (neither the result of the official's decision nor the possible negligence of those choices means that the choices themselves involved no policy judgment); *Sabow*, 93 F.3d at 1453-54 (although some of defendant's actions and inactions, if true, represent "alarming instances of poor judgment and a general disregard for sound investigative procedure," in the absence of mandatory directives governing how to perform investigations, the discretionary function exception barred plaintiffs' claims); *Weissich*, 4 F.3d at 813 ("it is not necessary for the government to prove a conscious decision based on a policy analysis. It is enough that the choice is one to which a policy analysis may apply." (internal citation omitted)). Thus, regardless of whether Agent Andersen knew he could alert local law enforcement, negligently decided not to alert local law enforcement, or negligently lost the map or information, Plaintiffs' claims would be barred under the discretionary function exemption because the decision to disclose involved the type of choice protected by the discretionary

function exception - whether that discretion was exercised appropriately or not. Discovery as to Agent Andersen's actions or subjective intentions would therefore be futile.

Similarly, discovery regarding agency interpretation of Guideline § VI(C)(2) and the custom and practice of how that rule is obeyed would not establish a basis for opposing the Government's Motion. As the Supreme Court stated in *Gaubert*, "it will most often be true that the general aims and policies of the controlling statute will be evident from its text." 499 U.S. at 324. As discussed in Section I, such is the case here. Guideline § VI(C)(2) permits agency discretion. Accordingly, discovery is not warranted. *See Freeman*, 556 F.3d 341-42 (affirming denial of discovery where plaintiffs failed to identify a mandatory directive or regulation because fact discovery would be futile in light of the jurisdictional bar); *Miller v. United States*, 710 F.2d 656, 666 (10th Cir. 1983) (affirming denial of discovery because "there are no facts which plaintiffs could arguably develop to escape the effect of the statutes and regulations," which were "within the discretionary function exception.") The Court therefore denies Plaintiffs' request for discovery.

### III.  Leave to Amend

Rule 15(a)(2), Fed. R. Civ. P., provides that leave to amend a complaint should be "freely given when justice so requires." Where a complaint has been dismissed at the pleading stage, dismissal generally should be with leave to amend unless it is clear the complaint cannot be saved by any amendment. *In re Daou Systems, Inc*., 411 F.3d 1006, 1013 (9th Cir. 2005). Because the Court concludes that it lacks subject matter jurisdiction, the Court finds that leave to amend would be futile. Therefore, this matter is dismissed with prejudice. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend.").

### IV.  Conclusion

The discretionary function exception bars this action and this Court lacks subject matter jurisdiction.

THEREFORE, IT IS ORDERED as follows:

- 14 -

1. Defendant's Motion to Dismiss (Doc. 5) is GRANTED.

2. Plaintiffs' request to conduct Rule 56(d) discovery (Doc. 8) is DENIED.

3. This case is dismissed with prejudice.

4. The Clerk of the Court shall enter judgment accordingly and close its file in this matter.

DATED this 24th day of January, 2013.

*Jennifer Zipps*
Jennifer G. Zipps
United States District Judge

- 15 -